# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>　　　　v.<br><br>PHONG PHAN,<br>　　　Defendant. | CR 18-00719-DSF<br><br>Order DENYING in Part Motion to Suppress Evidence and Statements (Dkt. 27) |

　　Defendant Phong Phan moves to suppress evidence seized during a search of his person and the automobile he was driving on May 4, 2017, as well as any fruits of that search and seizure. Mr. Phan also moves to suppress incriminating statements made to officers during the search. The government opposes the Motion. For the reasons stated below, the Motion is DENIED in part.

## I. Statement of Facts

　　On May 4, 2017, at approximately 12:45 a.m., Mr. Phan was driving a black Ford Explorer with a Nevada license plate on Crenshaw Boulevard in Gardena, California. Dkt. 29, Lopez Decl. ¶ 3; Dkt. 27, Deixler Decl., Ex. A (Incident Report) at 5. Torrance Police Department (TPD) Officers Ricky Lopez and Tyrone Gribben stopped the Explorer because it was operating without taillights in violation of California Vehicle Code § 24600(a). Id. Officer Lopez was aware from prior experience that the area is known for burglaries and property damage. Lopez Decl. ¶ 3.

Officer Gribben's uniform was equipped with a body camera and Officer Lopez's was equipped with an audio recording device. Id. ¶ 8; see generally Deixler Decl., Ex. B (Video); C (Audio). Officer Lopez approached the driver's side door and asked Mr. Phan for his driver's license. Lopez Decl. ¶ 4. Mr. Phan looked through his wallet for more than 30 seconds, but did not produce any identification. Id.[1] Officer Lopez asked Mr. Phan to get out of the Explorer because he did not feel comfortable standing in traffic while Mr. Phan looked for his license. Video at 00:05-00:27. Officer Lopez simultaneously unlocked the door and opened it. Id. Mr. Phan did not get out of the car, and Officer Lopez repeated his request three more times. Id. Mr. Phan still did not get out of the car, and Officer Lopez grabbed Mr. Phan's left arm to remove him, restrained his hands behind his back, and escorted him to the curb. Id. at 00:33-01:05. During this time, Officer Lopez noticed that Mr. Phan's eyes were glassy, unfocused, and bloodshot red. Lopez Decl. ¶ 4. He also noticed that Mr. Phan appeared to be sweating even though it was nighttime and cool outside, and that Mr. Phan was slurring his words. Id. Based on these observations, Officer Lopez suspected Mr. Phan was under the influence of alcohol or unknown narcotics, although this was not included in the Incident Report. Id.; Ex. A.

Immediately after removing Mr. Phan from the car, and while still restraining Mr. Phan's hands, Officer Lopez ordered Mr. Phan to separate his feet. Id. at 01:04-01:08. This brief conversation ensued:

> **Officer Lopez**: You don't have anything in your pockets that I need to know about, right?

---

[1] The Video appears to begin after Officer Lopez asked for Mr. Phan's ID. Only six seconds pass before he is asked to exit the vehicle and he is already looking in his wallet.

2

> **Mr. Phan**: No.
>
> **Officer Lopez**: No?
>
> **Mr. Phan**: No. Nothing?
>
> **Officer Lopez**: Okay. I'm going to go ahead and check, okay?
>
> **Mr. Phan**: Sure.

Id. at 01:09-01:18. Officer Lopez then searched Mr. Phan's pockets for two minutes. Id. at 01:18-:03:18. He removed three pieces of mail from Mr. Phan's back pocket, Ex. A at 5, but did not immediately inspect the mail. Id. Officer Lopez continued to search Mr. Phan by looking under his hat, lifting his shirt and touching his skin, and checking the lining of his underwear. Ex. B at 03:18-04:45. Officer Lopez searched Mr. Phan for more than three minutes. Id. at 01:18-04:45. He then ordered Mr. Phan to sit on the curb, put his legs out, cross his ankles, and put his hands on his knees. Id. at 04:45-04:56. Mr. Phan's hands were behind his back until he sat on the curb. Id.

Officer Lopez asked general background questions and asked where Mr. Phan's identification card was located. Id. at 05:00-05:15. Mr. Phan stated it was in his wallet. Id. Officer Lopez asked if there were drugs or weapons in the Explorer, and asked Mr. Phan twice if he could "make sure" there were no weapons or drugs in the Explorer. Id. at 05:16-05:40. Mr. Phan responded that there was nothing in the Explorer. Id. There was brief questioning regarding the ownership of the vehicle, and Mr. Phan stated he rented it for a friend. Id. at 07:47-8. Officer Lopez again questioned Mr. Phan about whether there was anything he should know about in the Explorer, and whether his identification card was in his wallet. Id. at 05:40-06:23. Mr. Phan then states: "You

3

threw my wallet on the floor, sir." Officer Lopez responded: "I threw it on the seat." Id. at 05:40-05:46. [2]

Officer Lopez went to the Explorer to retrieve the wallet, and spent approximately ninety seconds near the driver's side door. Id. at 06:25:-08:00.[3] Officer Lopez declares that during those ninety seconds, he opened the wallet to retrieve Mr. Phan's identification, and immediately observed multiple credit cards, various California driver's licenses with different names and pictures, and multiple gift cards. Lopez Decl. ¶ 13. He then walked around the Explorer to scan the interior for contraband, and noticed additional mail on the floorboard area. Id. During this time period, Officer Gribben stood by Mr. Phan and asked Mr. Phan about the Explorer. Id. at 06:25:-09:08. After spending nearly three minutes by the Explorer, Officer Lopez returned to the curb area and asked Mr. Phan for his name. Ex. B at 09:08-09:18. Mr. Phan provided his name. Id. Officer Lopez then muted his audio, and can be seen speaking with Officer Gribben and looking through the contents of Mr. Phan's wallet. Id. at 09:20-12:34.

Officer Lopez then questioned Mr. Phan about the contents of his wallet and pockets. Id. at 12:40-16:00. No Miranda warnings were given before questioning began. The officers then handcuffed Mr. Phan and searched the Explorer for approximately twenty minutes. Id. at 16:57-37:00. When the officers handcuffed Mr. Phan, each officer informed Mr. Phan that he was not under arrest and Officer Gribben informed Mr. Phan that he was being

---

[2] In their papers, the parties dispute whether Officer Lopez tossed Mr. Phan's wallet on the ground or in the Explorer. It is unclear from the Video where the wallet was tossed, but the Video provides no reason for the Court to doubt that the wallet was tossed inside the Explorer.

[3] Officer Lopez can no longer be seen in the Video.

detained pending the investigation. Id. at 16:57-17:12. The search of the Explorer's passenger's side floorboard and center console revealed multiple car registration documents, mail addressed to persons other than Mr. Phan, insurance paperwork, and a blue disabled placard. Lopez Decl. ¶ 18; Ex. B at 18:44-37:00. The search of the trunk and containers revealed various computers, cell phones, USB drives, a printer, a credit card scanner, blank checks, stolen or forged checks, bank statements of persons other than Mr. Phan, and a bag appearing to contain methamphetamine. Id.

Mr. Phan was placed under arrest for violating California Penal Code §§ 530.5(a) (identity theft), 496(a) (stolen property), Health and Safety Code § 11377(a) (possession of methamphetamine), and 18 U.S.C. § 1708 (possession of stolen mail). Lopez Decl. ¶ 19. After Mr. Phan was arrested and placed in the police car, Officer Gribben conducted a records check for warrants, which revealed that Mr. Phan had two outstanding arrest warrants and his license had been suspended. Ex. B. at 39:31-40:56; Lopez Decl. ¶ 20.

## II. Discussion

Mr. Phan argues that the mail found in his pockets and the contents found in his wallet and Explorer (the Evidence) should be suppressed because his Fourth Amendment rights were violated by his prolonged detention, pat-down during the traffic stop, and search of the Explorer. Mr. Phan also argues that any statements made during his detention should be suppressed because he was interrogated in violation of his Fifth Amendment Rights.

### A. The Initial Traffic Stop

"A seizure for a traffic violation justifies a police investigation of that violation." Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015). When analyzing whether a traffic stop is lawful, the

5

Supreme Court applies the analytical approach established in Terry v. Ohio, 392 U.S. 1, 22-24 (1968). See id. ("'[A] relatively brief encounter,' a routine traffic stop is 'more analogous to a so-called '*Terry* stop' . . . than to a formal arrest.'" Id. (alteration in original) (quoting Knowles v. Iowa, 535 U.S. 113, 117 (1998))). Under Terry, police officers may temporarily detain a person based on reasonable suspicion that the person is involved in illegal activity. 392 U.S. at 22-24. "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). "A traffic violation alone is sufficient to establish reasonable suspicion." United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006) (citing Whren v. United States, 517 U.S. 806, 810 (1996)). Here, the officers initiated a traffic stop based on a California Vehicle Code violation because they saw the Explorer driving at night without illuminated taillights. See Cal. Veh. Code § 24600(a) (requiring every motor vehicle to be equipped with lighted taillamps during darkness). The government has met its burden of establishing that the initial traffic stop was lawful.

Mr. Phan contends the traffic stop became unlawful because it was prolonged beyond the time reasonably required to complete the purpose, or "mission," of the stop. Mr. Phan first asserts that he was unlawfully detained when Officer Lopez removed him from the Explorer and restrained his hands behind his back.[4] In

---

[4] The parties dispute whether Officer Lopez tied something around Mr. Phan's hands to restrain him. From the Video, it appears Officer Lopez is doing something with Mr. Phan's hands, but it is not clear what he is doing. The video clip shown by the government at the hearing on this motion is not dispositive, but it does not appear that anything was tied around Mr. Phan's hands. Certainly it is not obvious that there was. Officer Lopez does appear to be restraining Mr. Phan's hands in some manner and portions of the Video

Rodriguez, 135 S. Ct. at 1616, the Supreme Court held that traffic stops may last only as long as is reasonably necessary to carry out the "mission" of the stop, unless police have an independent reason to detain the driver based on reasonable suspicion. "When stopping an individual for a minor traffic violation, 'an officer's mission includes ordinary inquiries incident to [the traffic] stop.'" United States v. Evans, 786 F.3d 779, 786 (9th Cir. 2015) (alteration in original) (quoting Illinois v. Caballes, 543 U.S. 405, 408 (2005)). This includes "determining whether to issue a traffic ticket" and "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Rodriguez, 135 S. Ct. at 1615. "A stop that is unreasonably prolonged beyond the time needed to perform these tasks ordinarily violates the Constitution." United States v. Gorman, 859 F.3d 706, 714 (9th Cir. 2017).

Here, Mr. Phan was properly stopped for a traffic violation. He did not produce identification within approximately 30 seconds after being requested to do so. He was asked to step out of the car so Officer Lopez did not have to stand in traffic while Mr. Phan looked for his identification. Officers may order an occupant out of his car during a valid stop. Rodriguez, 135 S. Ct. at 1616 n.2 (citing Arizona v. Johnson, 555 U.S. 323, 330 (2009)). Requiring Mr. Phan to step out of the vehicle while the officers completed the traffic violation investigation did not violate Mr. Phan's Fourth

---

make it appear that Mr. Phan's hands are restrained in some manner.. At some point, Mr. Phan is moved to the curb and puts his hands on his knees and there are clearly no restraints. The defense has not adequately rebutted the testimony that Mr. Phan's hands were not tied, but the issue ultimately has no impact on the Court's decision.

Amendment rights.[5] An officer may also restrain and move the former occupant of a vehicle during a traffic stop if the officer reasonably fears for his safety. See Rohde v. Roseburg, 137 F.3d 1142, 1144 (9th Cir. 1998). Before restraining Mr. Phan, Officer Lopez had observed that Mr. Phan was (1) driving without taillights, (2) was sweating at nighttime and had red, glazed eyes, (3) failed to produce a valid driver's license when requested, and (4) did not immediately comply with Officer Lopez's orders to step out of the car so Officer Lopez could move out of traffic. The Court finds the brief restraint was reasonable, given Officer Lopez's suspicion of drug or alcohol use and Mr. Phan's failure to comply with requests so that Officer Lopez could move out of traffic. See Rodriguez, 135 S. Ct. at 1616 (noting that officers may "need to take certain negligibly burdensome precautions in order to complete" their "mission safely").

This conduct also did not unlawfully prolong the traffic stop. An officer may extend a traffic stop if there is a reasonable suspicion of additional illegal activity, meaning the officer can point to "suspicious factors that are particularized and objective." See United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007). Here, the officers' extension of the stop for a short period of time beyond the time needed to complete the traffic violation investigation was justified because Mr. Phan (1) initially appeared to be under the influence of drugs or alcohol, and (2) failed to produce a valid identification card and get out of the car.

After Mr. Phan got out of the car, however, the officers prolonged the stop unreasonably. There are no questions

---

[5] That Officer Lopez unlocked the door, opened the driver's door, and grabbed Mr. Phan's arm to remove him from the car does not change the Court's conclusion, given the multiple commands Officer Lopez gave Mr. Phan to step out of the car.

8

concerning Mr. Phan's identity for four minutes, and Officer Lopez immediately searched Mr. Phan. Neither officer conducted a field sobriety test. There was minimal questioning concerning Mr. Phan's taillights—the purpose of the stop. After the search, the questions turned to whether there were drugs or weapons in the Explorer. For example, Officer Lopez asked Mr. Phan multiple times if he could search the Explorer—but there is no contention that this related to the initial traffic stop, whether Mr. Phan was under the influence of drugs or alcohol, or Mr. Phan's identity. Ex. B at 05:25-05:35. It appears from the Video that after Mr. Phan got out of the car, the officers began to investigate unrelated criminal activity and to attempt to secure consent or find probable cause to search the car. Because the officers' questions and conduct were not authorized by the actual traffic stop mission or by reasonable suspicion of criminal activity, the traffic stop was unlawfully prolonged.

## B. The Pat-Down

### 1. Reasonable Suspicion to Conduct the Pat-Down

An officer may conduct a limited pat-down search for weapons when "he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27. Here, the officers' justification for the pat-down search was: (1) Mr. Phan was wearing loose or baggy clothing, (2) Mr. Phan appeared to be under the influence of alcohol or narcotics and failed to comply with Officer Lopez's commands to unlock the door, get out of the car, and provide a driver's license, and (3) there were pedestrians in cars and on the streets.

These facts fall short of supporting a reasonable belief that Mr. Phan was armed and dangerous. An officer's belief that an individual is under the influence is insufficient to justify a pat-

9

down search.  See Ramirez v. Buena Park, 560 F.3d 1012, 1022 (9th Cir. 2009) ("Being 'testy' and suspected of illicit drug use does not support a finding that [the individual] had a weapon.").  Mr. Phan is wearing a flannel shirt and jeans, neither of which suggests Mr. Phan was armed.  See Thomas v. Dillard, 818 F.3d 864, 884 (9th Cir. 2016) (acknowledging that an untucked T-shirt and jeans "do nothing to *dispel* the notion [the individual] was armed," but also noting that neither suggests the individual was armed (emphasis in original)); id. ("That a person is normally dressed does not give rise to reasonable suspicion the person is armed and dangerous.").  Though Mr. Phan did not immediately step out of the car and produce a valid driver's license, he made no movements or statements indicating that he might be armed and was fully compliant once outside of the car.  No pedestrians can be seen in the Video at the time of the pat-down, and the presence of pedestrians alone does not make it more likely that Mr. Phan might be armed.  Moreover, Officer Lopez restrained Mr. Phan's hands before conducting the pat-down search and Officer Gribben was also present.  These facts do not justify a pat-down search for officer safety.[6]

    The government relies on United States v. Herman, 415 F. App'x 822 (9th Cir. 2011), but there the pat-down search was justified based on the officer's observations that the defendant appeared intoxicated and made "evasive movements" when asked about weapons.  Id. at 824.  Here, the officers do not contend that Mr. Phan made any evasive movements when asked about weapons.  The Video shows none.  The facts known to the officers

---

[6] As previously noted, it is not clear from the Video whether Officer Lopez tied anything around Mr. Phan's hands, but Officer Lopez is clearly restraining his hands in some manner.

at the time of the pat-down were insufficient to support a reasonable belief that Mr. Phan was armed and dangerous.

### 2. Scope of Pat-Down

Even if the officers had grounds to conduct a pat-down, the search exceeded its lawful scope. "An officer's seizure of contraband during a Terry search is constitutional if 'a police officer lawfully pats down a suspect's *outer clothing* and feels an object whose contour or mass makes its identity *immediately apparent*. . . .'" United States v. I.E.V., 705 F.3d 430, 440 (9th Cir. 2012) (emphasis in original) (quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)). "A search exceeds the proper scope if 'the incriminating character of [an item is] not immediately apparent' but is discovered 'only as a result of a further search. . . .'" Id. (alteration in original) (quoting Dickerson, 508 U.S. at 379).

Officer Lopez searched Mr. Phan's pockets for more than two minutes, lifted Mr. Phan's shirt, checked the lining of his underwear, and lifted his hat. Officer Lopez provides no justification for reaching under Mr. Phan's clothing. The government contends that the pieces of paper at issue here were found "during the initial pat-down of defendant's back pocket," so the scope of the search is somehow not relevant. Opp'n at 13 n.5. But Officer Lopez does not begin with the type of outer-clothing pat-down permitted under Terry. He immediately stated he was going to check Mr. Phan's pockets and proceeded to reach into each of his pockets for more than two minutes. See Video starting at 1:12. The search exceeded the legal scope of a Terry frisk.

### C. Search of the Wallet

The government does not dispute that Mr. Phan had a reasonable expectation of privacy as to the contents of his wallet. It contends the warrantless search was lawful because Mr. Phan initially failed to produce identification within 30 seconds and

11

Officer Lopez later opened the wallet to obtain Mr. Phan's driver's license and determine his identity.

Neither party cites relevant authority concerning whether a warrantless search of a detained individual's wallet for identification purposes in these circumstances is permitted under the Fourth Amendment.[7] District courts in the Ninth Circuit have allowed the search of a wallet for identification purposes if the individual refuses to produce identification during a detention or arrest. See, e.g., Wofford v. Bracks, CV 15-1052-GW (SP), 2016 WL 8732178, at *10 (C.D. Cal. Jul. 26, 2016) (citing Knowles v. Iowa, 525 U.S. 113, 117-19 (1998)). But the search of the wallet is unreasonable absent a recognized exception. See, e.g., Aquino v. County of Monterey Sheriff's Dep't, Case No. 5:14-cv-003387-EJD, 2016 WL 5946867, at *9-10, (N.D. Cal. Sept. 26, 2016); United States v. Collier, Case No. EDCR 13-19-JGB, 2015 WL 11123302, at *8 (C.D. Cal. Nov. 10, 2015).

The facts here differ from those in Wofford, where the search of a wallet for identification purposes was found reasonable after the individual was specifically warned he would be arrested for failure to produce a valid identification card, and the individual still refused to comply. 2016 WL 8732178, at *10. Here, when Mr. Phan was initially stopped, he failed to produce a valid driver's license after approximately 30 seconds had passed. Mr. Phan never stated that he would not provide identification and the Video shows him actively searching his wallet. The delay in retrieving the identification caused Officer Lopez to tell Mr. Phan to get out of the car and then to remove him. Mr. Phan was not

---

[7] The authority cited by the government is not persuasive. An officer's right to inspect a driver's identification card and make inquiries relevant to vehicle registration and ownership or conduct a search for that information does not equate to a right to search an individual's wallet.

provided a second opportunity to produce valid identification or provided with any warning of the consequences of failing to do so.

There appears to be no Supreme Court or Ninth Circuit authority concerning the search of a wallet in these circumstances.[8] Though it is a close question under the facts here, the Court finds the search violated the Fourth Amendment. The officers' choices were not, as the government contends, to permit Mr. Phan to retrieve the wallet or have the officers retrieve <u>and search</u> the wallet. The officers should have retrieved the wallet, handed it to Mr. Phan, and asked him again to provide his driver's license. The Video shows Mr. Phan was compliant, sitting on the curb, and answering the officers' questions. There was no indication that Mr. Phan would not have provided his identification if handed the wallet, and Mr. Phan having taken 30 seconds in an unsuccessful attempt to retrieve it when initially stopped is insufficient to allow the officers to search the wallet.

### D. Search of the Explorer

"[U]nder the automobile exception, a police officer may conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains evidence of a crime." <u>United States v.</u>

---

[8] At least one circuit permits an officer to check an individual's identification in his wallet during a <u>Terry</u> stop, even when the individual has not refused to produce identification. See <u>United States v. Brown</u>, 366 F.3d 456, 461 (7th Cir. 2004) (citing <u>United States v. Hernandez–Rivas</u>, 348 F.3d 595, 599 (7th Cir.2003)). The California Supreme Court permits limited warrantless searches for required registration and identification documentation during a valid traffic stop when the traffic offender does not provide the requested documentation to the officer. <u>In re Arturo D.</u>, 27 Cal. 4th 60, 86 (2002) (holding warrantless search of wallet found under passenger's seat for identification purposes was reasonable after driver failed to produce identification when requested).

13

Johnson, 913 F.3d 793, 801 (9th Cir. 2019). "Probable cause exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place under the totality of the circumstances." United States v. Faagai, 869 F.3d 1145, 1150 (9th Cir. 2017) (internal quotation marks and citation omitted). "A finding of probable cause must be supported by the objective facts known to the officer at the time of the search." Id.

The officers searched the Explorer for evidence of identity theft based on the contents of Mr. Phan's wallet, statements made by Mr. Phan, and papers Officer Lopez saw in plain sight when he retrieved Mr. Phan's wallet.[9] Lopez Decl. ¶ 16. Because the search of the wallet was unlawful, there was no probable cause to search the Explorer.

## E. Inevitable Discovery Doctrine

"The exclusionary rule allows courts to suppress evidence obtained as a result of an unconstitutional search or seizure." United States v. Peterson, 902 F.3d 1016, 1019 (9th Cir. 2018). The rule exists to deter police misconduct. See Davis v. United States, 564 U.S. 229, 236-238 (2011); United States v. Jobes, No. 18-50204, slip op. at 7 (9th Cir. Aug. 9, 2019) ("The exclusionary rule has traditionally been driven by one primary policy consideration: the deterrence of unconstitutional acts by law enforcement."). The "significant costs of this rule" make it

---

[9] Mr. Phan contends the officers engaged in two unlawful searches of the Explorer – once when Officer Lopez retrieved the wallet and again after he searched the wallet. The Evidence at issue is the product of the second search. Though Officer Lopez spends about 90 seconds on the driver's side of the vehicle when he retrieves the wallet, he states he was looking through the wallet. Lopez Decl. ¶ 13. It is unclear from the record whether Officer Lopez searched the Explorer when he retrieved the wallet, though the Video shows Officer Lopez looking around the outside of the Explorer.

"'applicable only . . . where its deterrence benefits outweigh its substantial social costs.'" Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016) (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)). Suppression of evidence is a "last resort," not a "first impulse." Id. (quoting Hudson, 547 U.S. at 591).

There are three exceptions to the exclusionary rule that implicate the causal relationship between the illegal act and discovery of the evidence: (1) the independent source doctrine; (2) the inevitable discovery doctrine; and (3) the attenuation doctrine. Id. The "inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." Id.

> If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale [for the exclusionary rule] has so little basis that the evidence should be received. Anything less would reject logic, experience and common sense.

Nix v. Williams, 467 U.S. 431, 444 (1984).

### 1. Evidence on Mr. Phan's Person and Wallet

The government argues that the pieces of mail found in Mr. Phan's pocket would inevitably have been discovered because the officers would have discovered the arrest warrants, arrested Mr. Phan, and searched him incident to that arrest.[10]

---

[10] A search incident to a lawful arrest "allows a police officer to search an arrestee's person and the area within the arrestee's immediate control." Johnson, 913 F.3d at 799 ("[A] search, incident to a lawful arrest, does not necessarily need to follow the arrest to comport with the Fourth Amendment." Id. "Instead, probable cause to arrest must exist at the time of

15

The government has met its burden to establish by a preponderance of the evidence that the inevitable discovery doctrine applies to the mail found in Mr. Phan's pocket. It is common and permitted for officers to run a warrant check during a valid traffic stop. See Rodriguez, 135 S. Ct. at 1615. Here, the officers ran a warrant check and discovered arrest warrants unrelated to the present investigation, albeit after searching and arresting Mr. Phan, but before Mr. Phan was taken to the station. An arrest warrant requires an officer to arrest the individual with the warrant. Strieff, 136 S. Ct. at 2063 ("A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." (internal quotation marks and citation omitted)). It also dissipates the taint between the unlawful conduct and the discovery of the evidence. See id. (applying the attenuation doctrine and finding valid warrant dissipated taint between unlawful conduct and discovery of evidence); Segura v. United States, 468 U.S. 796, 815 (1984) (applying independent source doctrine and finding valid warrant dissipated taint between unlawful conduct and discovery of evidence). Because the officers would have inevitably discovered the mail pursuant to a search incident to a lawful arrest, the exclusionary rule does not apply to the mail found in Mr. Phan's pocket.

Similarly, the evidence discovered in Mr. Phan's wallet would have inevitably been discovered, and the exclusionary rule is inapplicable.

---

the search, and the arrest must follow 'during a continuous sequence of events.'" Id. (quoting United States v. Smith, 389 F.3d 944, 951 (9th Cir. 2004)). The exception applies to searches incident to a lawful arrest before the arrest itself, "even if the crime of arrest is different from the crime for which probable cause existed." Id. at 800.

16

The "primary policy consideration for the rule"— to deter police misconduct, does not significantly outweigh its costs to society to justify its application here. Jobes, No. 18-50204, at 7. The initial stop and warrant check were lawful. The officers' failure to immediately run the warrant check was at most, negligent. There is no evidence in the record that the unlawful searches and prolonging of the traffic stop were part of any systemic or recurrent police misconduct, nor were they "purposeful or flagrant" violations of Mr. Phan's Fourth Amendment rights. Streiff, 136 S. Ct. at 2063. If the officers had proceeded in a different order: traffic stop, warrant check, arrest and search, there would be no grounds for a motion. There is no indication that other police officers will be incentivized to engage in unconstitutional activity (which would expose officers to civil liability) before running a warrant check on a routine traffic stop. See id. at 2064.

### 2. Evidence in Explorer

The government contends that because the Explorer was validly impounded, the evidence obtained during any unlawful search would inevitably have been discovered as part of an inventory search.

Under California law, a car may be removed by a peace officer "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is . . . required or permitted to take, and does take, the person into custody." Cal. Veh. Code § 22651(h)(1). Here, Mr. Phan was operating a vehicle on a suspended license and had two outstanding arrest warrants. Mr. Phan was taken into custody. Mr. Phan does not dispute that impoundment was authorized by the California Vehicle Code and the TPD policies. But statutory or police policy authorization to remove a vehicle by itself is insufficient to authorize removal. United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir. 2012)

17

(citing Miranda v. City of Cornelius, 429 F.3d 858, 864 (9th Cir. 2005)). The government must demonstrate that the removal of the vehicle furthered a "caretaking function." Id. Whether an impound is warranted "depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." Ramirez, 560 F.3d at 1025 (quoting Miranda, 429 F.3d at 864).

Here, the officers state the decision to impound the Explorer was made because the vehicle was parked on a busy street in an area Officer Lopez knew was prone to burglaries and property damage, there was no other person at the scene who could drive the Explorer, and Mr. Phan told them it was rented for a friend. Opp'n at 21. Fear of vandalism or theft can satisfy the caretaking function requirement. See id. (holding that impoundment was warranted under the community caretaking doctrine where the defendant was arrested in a drugstore parking lot and would have been unable to "return to the drugstore to retrieve his car," but leaving the car there "would have made it an easy target for vandalism or theft"). Here, the Explorer was parked on a public street and would only be legally parked until the next morning. [11] Dkt. 30, Reply at 9 (citing Deixler Decl., Exs. D, E). There is no evidence in the record that someone was able to retrieve the Explorer before it became illegally parked later that morning. Coupled with Officer Lopez's declaration that the area was known for burglaries and property damage, [12] the Court finds that the

---

[11] The incident report stated the justification for impounding the vehicle was that it was not legally parked, Mr. Phan was arrested, and no other driver was present to drive the vehicle. Ex. A. For the purpose of this motion, the Court assumes that the Explorer was legally parked at the time of the arrest. Deixler Decl., Exs. D, E.

[12] Lopez Decl. ¶ 3 ("I patrol this area frequently, and know that there are burglaries and frequent property crimes in the area.").

18

officers' decision to impound the vehicle served a caretaking function.[13]  Cf. United States v. Rogers, 156 F. Supp. 3d 1186, 1190-91 (E.D. Cal. 2016) (impoundment of vehicle parked on residential street did not serve caretaking function, despite declaration that area was known for vandalism and theft, when individual's  mother, the registered owner of the vehicle, could retrieve the vehicle).

Because the Evidence would have inevitably been discovered pursuant to a search incident to a lawful arrest and during a subsequent inventory search of the vehicle, the evidence in the Explorer will not be suppressed.[14]

### F.    Mr. Phan's Statements

At the hearing on this Motion, the government stated it would not introduce any statements Mr. Phan made after he was handcuffed.  The defense also moved to suppress certain statements Mr. Phan made before being handcuffed.  The parties are to meet and confer concerning the specific statements the government may seek to introduce and to provide supplemental briefing on any disputed statements by August 22 (or later if the parties seek a continuance).

---

[13] At the hearing, the defense asked Officer Lopez for the number of burglary or property crimes in the area.  That Officer Lopez was unable to cite statistics does not mean the area is not known for property damage.  The defense also stated that Officer Lopez changed the reason for the impoundment.  The Court finds that Officer Lopez, at worst, added to his reasons.  Providing additional justifications for the impoundment does not make the impoundment unlawful.

[14] For the same reasons the exclusionary rule is inapplicable to the evidence found in Mr. Phan's pocket, it is inapplicable to the evidence discovered in the Explorer.

## III. Conclusion

The motion to suppress the Evidence is DENIED. The Motion to suppress Mr. Phan's statements will be decided after the parties submit supplemental briefing.

IT IS SO ORDERED.

Date: August 13, 2019

Dale S. Fischer
United States District Judge